# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 8, 2016       Decided March 31, 2017

No. 14-1234

BAIS YAAKOV OF SPRING VALLEY, ET AL.,
PETITIONERS

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

QUILL CORPORATION, ET AL.,
INTERVENORS

———

Consolidated with 14-1235, 14-1239, 14-1243, 14-1270,
14-1279, 14-1292, 14-1293, 14-1294, 14-1295, 14-1297,
14-1299, 14-1302

———

On Petitions for Review of an Order of
the Federal Communications Commission

———

*Matthew A. Brill* argued the cause for Class Action
Defendant Petitioners. With him on the briefs were *Matthew
T. Murchison*, *Jonathan Y. Ellis*, *Samuel L. Feder*, *Matthew E.
Price*, *Robert A. Long*, *Yaron Dori*, *Michael Beder*, *Marie
Tomassi*, *Joseph R. Palmore*, *Thomas R. McCarthy*, *Helgi C.*

*Walker*, *Kim E. Rinehart*, *Jeffrey R. Babbin*, *Blaine C. Kimrey*, and *Bryan K. Clark*.

*Megan L. Brown* and *Brett A. Shumate* were on the brief for *amici curiae* National Federation of Independent Business Small Business Legal Center and Consumers' Research in support of the Class Action Defendant Petitioners. *Karen R. Harned* entered an appearance.

*Aytan Y. Bellin* argued the cause for Waiver Petitioners Bais Yaakov of Spring Valley, et al. With him on the briefs were *Roger Furman*, *Phillip A. Bock*, and *Glenn L. Hara*. *David M. Oppenheim* entered an appearance.

*Allison M. Zieve* and *Scott L. Nelson* were on the brief for *amicus curiae* Public Citizen, Inc. in support of the Waiver Petitioners.

*Matthew J. Dunne*, Counsel, Federal Communications Commission, argued the cause for respondent. With him on the brief were *William J. Baer*, Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson* and *Steven J. Mintz*, Attorneys, *Jonathan B. Sallet*, General Counsel, Federal Communications Commission, *David M. Gossett*, Deputy General Counsel, and *Jacob M. Lewis*, Associate General Counsel. *Kristen C. Limarzi*, Attorney, U.S. Department of Justice, and *Richard K. Welch*, Deputy Associate General Counsel, Federal Communications Commission, entered appearances.

*Aytan Y. Bellin* argued the cause for intervenors Bais Yaakov of Spring Valley, et al. in support of the respondent on the statutory authority issue. With him on the brief were *Roger Furman*, *Phillip A. Bock*, and *Glenn L. Hara*.

*Robert A. Long* argued the cause for intervenors in support of the respondent on the waiver issue. With him on the brief were *Yaron Dori*, *Michael Beder*, *Matthew A. Brill*, *Matthew T. Murchison*, *Jonathan Y. Ellis*, *Marie Tomassi*, *Joseph R. Palmore*, *Blaine C. Kimrey*, *Bryan K. Clark*, *Samuel L. Feder*, *Matthew E. Price*, *Thomas R. McCarthy*, *Helgi C. Walker*, *Kim E. Rinehart*, and *Jeffrey R. Babbin*.

Before: KAVANAUGH and PILLARD, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Senior Circuit Judge* RANDOLPH joins.

Dissenting opinion filed by *Circuit Judge* PILLARD.

KAVANAUGH, *Circuit Judge*: Believe it or not, the fax machine is not yet extinct. Some businesses send unsolicited advertisements by fax. This case arises out of Congress's efforts to protect consumers from unsolicited fax advertisements.

The Junk Fax Prevention Act of 2005 bans most unsolicited fax advertisements, but allows unsolicited fax advertisements in certain commercial circumstances. When those unsolicited fax advertisements are allowed, the Act requires businesses to include opt-out notices on the faxes. *See* 47 U.S.C. § 227(b).

In 2006, the FCC issued a rule that requires businesses to include opt-out notices not just on *unsolicited* fax advertisements, but also on *solicited* fax advertisements. The term "solicited" is a term of art for faxes sent by businesses with the invitation or permission of the recipient.

In this case, businesses that send solicited fax advertisements contend that the FCC's new rule exceeds the FCC's authority under the Act. The question is whether the Act's requirement that businesses include an opt-out notice on *unsolicited* fax advertisements authorizes the FCC to require businesses to include an opt-out notice on *solicited* fax advertisements. Based on the text of the statute, the answer is no.

We hold that the FCC's 2006 Solicited Fax Rule is therefore unlawful to the extent that it requires opt-out notices on solicited faxes. The FCC's Order in this case interpreted and applied that 2006 Rule. We vacate that Order and remand for further proceedings.

I

In 1991, Congress passed and President George H.W. Bush signed the Telephone Consumer Protection Act. *See* Pub. L. No. 102-243, 105 Stat. 2394 (codified as amended at 47 U.S.C. § 227). In 2005, Congress passed and President George W. Bush signed the Junk Fax Prevention Act, which amended the 1991 Act. *See* Pub. L. No. 109-21, 119 Stat. 359 (codified at 47 U.S.C. § 227). For simplicity, we will refer to the combined and amended legislation as "the Act."

The Act generally prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The Act defines "*unsolicited* advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*." *Id*. § 227(a)(5) (emphasis added).

The Act contains an exception that allows certain unsolicited fax advertisements. The statute permits unsolicited fax advertisements where (1) "the unsolicited advertisement is from a sender with an established business relationship with the recipient"; (2) the sender obtained the recipient's fax number through "voluntary communication" with the recipient or "the recipient voluntarily agreed to make" his information available in "a directory, advertisement, or site on the Internet"; and (3) the unsolicited advertisement "contains a notice meeting the requirements under paragraph (2)(D)." *Id*. § 227(b)(1)(C)(i)-(iii). Paragraph (2)(D), in turn, provides, among other things, that the notice must be "clear and conspicuous" and "on the first page of the unsolicited advertisement," must state that the recipient may opt out from "future unsolicited advertisements," and must include a "cost-free mechanism" to send an opt-out request "to the sender of the unsolicited advertisement." *Id*. § 227(b)(2)(D).

That third requirement – the opt-out notice – is central to this case.

Congress has authorized the FCC to issue regulations to implement the Act. *See id*. § 227(b)(2). Fax senders face a stiff penalty for violating the FCC's regulations. Importantly, the Act supplies a private right of action to fax recipients for them to sue fax senders that send unsolicited fax advertisements in violation of FCC regulations. *See id*. § 227(b)(3). The Act allows plaintiffs to obtain from fax senders at least $500 for each violation. *See id*. Those penalties can add up quickly given the nature of mass business faxing.

In 2006, the FCC issued a new rule governing *solicited*

faxes. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25,967, 25,971-72 (May 3, 2006) (now codified at 47 C.F.R. § 64.1200(a)(4)(iv)). We will refer to that rule as the Solicited Fax Rule. The Solicited Fax Rule requires a sender of a fax advertisement to include an opt-out notice on the advertisement, even when the advertisement is sent to a recipient from whom the sender "obtained permission." 71 Fed. Reg. at 25,972. In other words, the FCC's new rule mandates that senders of *solicited* faxes comply with a statutory requirement that applies only to senders of *unsolicited* faxes.

Petitioner Anda is a company that sells generic drugs. As part of its business, Anda faxes advertisements to small pharmacies. Anda's fax advertisements convey pricing information and weekly specials to the pharmacies. Many pharmacies have given permission to Anda for Anda to send those faxes.

In 2010, Anda sought a declaratory ruling from the FCC clarifying that the Act does not require an opt-out notice on solicited fax advertisements – that is, those that are sent with the recipient's prior express permission. *See* Anda Petition for Declaratory Ruling, CG Docket No. 05-338 (Nov. 30, 2010).

That issue was of great importance to Anda. In 2008, Anda had been sued in a class action in Missouri state court for alleged violations of the FCC's Solicited Fax Rule. Many of the plaintiff pharmacies in that case admitted that they had expressly given permission to Anda for Anda to send fax advertisements to the plaintiffs. But those plaintiffs nevertheless sought over $150 million in damages from Anda because Anda's fax advertisements allegedly did not include

opt-out notices that complied with the Solicited Fax Rule's requirements.

Let that soak in for a minute: Anda was potentially on the hook for $150 million for failing to include opt-out notices on faxes that the recipients had given Anda permission to send. If the Act actually provides the FCC with the authority to issue the Solicited Fax Rule, then Anda could be subject to that large class-action damage award. But if the Act does not provide the FCC with the authority to issue the Solicited Fax Rule, then Anda would be off that hook. Several other businesses facing similar class-action lawsuits joined Anda's petition to the FCC.

In response to Anda's petition, the FCC adhered to its interpretation of the Act as providing the FCC with the authority to require opt-out notices on solicited faxes as well as unsolicited faxes (although the FCC said it would waive application of the rule to businesses that sent solicited faxes before April 30, 2015). *See* Order, *Petitions for Declaratory Ruling, Waiver, and/or Rulemaking Regarding the Commission's Opt-Out Requirement for Faxes Sent with the Recipient's Prior Express Permission*, 29 FCC Rcd. 13,998 (2014). Commissioner Pai and Commissioner O'Rielly dissented in relevant part. Commissioner Pai stated that the FCC's statutory approach reflected "convoluted gymnastics." *Id*. at 14,018 (Pai, concurring in part and dissenting in part). Anda and the other companies then filed a petition for review in this Court. This Court has jurisdiction over the petition under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1).

II

The FCC says that the Act's requirement that businesses include opt-out notices on *unsolicited* fax advertisements grants the FCC the authority to also require businesses to

include opt-out notices on *solicited* fax advertisements – that is, those fax advertisements sent with the permission of the recipient. We disagree with the FCC.

The relevant provision of the Act provides: "It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an *unsolicited* advertisement." 47 U.S.C. § 227(b) (emphasis added). The Act defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*." *Id.* § 227(a)(5) (emphasis added). Pursuant to regulation, a fax recipient may revoke previously granted permission by sending a request to the sender. *See* 47 C.F.R. § 64.1200(a)(4)(vi).

The Act contains an exception that allows certain unsolicited fax advertisements. As relevant here, the Act allows a business to transmit an unsolicited fax advertisement when, among other things, the fax "contains a notice" that the recipient may opt out from "future unsolicited advertisements." *Id.* § 227(b)(1)(C), (b)(2)(D).

Although the Act requires an opt-out notice on unsolicited fax advertisements, the Act does not require a similar opt-out notice on *solicited* fax advertisements – that is, those fax advertisements sent with the recipient's prior express invitation or permission. Nor does the Act grant the FCC authority to require opt-out notices on solicited fax advertisements.

The text of the Act provides a clear answer to the question presented in this case. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 & n.9

(1984). Congress drew a line in the text of the statute between unsolicited fax advertisements and solicited fax advertisements. Unsolicited fax advertisements must include an opt-out notice. But the Act does not require (or give the FCC authority to require) opt-out notices on solicited fax advertisements. It is the Judiciary's job to respect the line drawn by Congress, not to redraw it as we might think best.[1]

The FCC and the dissent seem to suggest that the agency may take an action – here, requiring opt-out notices on solicited fax advertisements – so long as Congress has not *prohibited* the agency action in question. That theory has it backwards as a matter of basic separation of powers and administrative law. The FCC may only take action that Congress has *authorized*. *See Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2445, slip op. at 21 (2014); *American Library Association v. FCC*, 406 F.3d 689, 698 (D.C. Cir. 2005). Congress has not authorized the FCC to require opt-out notices on solicited fax advertisements. And that is all we need to know to resolve this case.

In trying to sidestep the statute's language, the FCC argues that it can require opt-out notices on solicited faxes because Congress did not define the phrase "prior express invitation or permission" in the Act. To reiterate, the Act states that an "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*." 47 U.S.C. § 227(a)(5) (emphasis added). The FCC argues that it has reasonably defined the phrase "prior

---

[1] The precise question here, to be clear, is whether Section 227(b) authorizes the opt-out notice requirement for solicited fax advertisements. The FCC has not claimed that any other provision of the Act could authorize an opt-out notice requirement on solicited fax advertisements.

express invitation or permission" to mean that prior express permission lasts only until it is revoked, and that all fax advertisements – even solicited fax advertisements – therefore must include a means to revoke that permission.

If you are finding the FCC's reasoning on this point difficult to follow, you are not alone. We do not get it either. The phrase "prior express invitation or permission" tells us what it may take for a fax to be considered solicited rather than unsolicited. The FCC can reasonably define that concept within statutory boundaries. The FCC can also reasonably provide, as it has, that a recipient may revoke previously granted permission by sending a request to the sender. *See* 47 C.F.R. § 64.1200(a)(4)(vi). But what the FCC may not do under the statute is require opt-out notices on solicited faxes – that is, opt-out notices on those faxes that are sent with the prior express invitation or permission of the recipient.

The FCC responds that giving fax recipients a cost-free, simple way to withdraw prior permission is good policy. The agency says that absent a requirement that senders include an opt-out notice on fax ads sent with prior express permission, some recipients may have trouble figuring out how to revoke their permission. But the fact that the agency believes its Solicited Fax Rule is good policy does not change the statute's text. *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 188 (1994). The text of the Act does not grant the FCC authority to require opt-out notices on solicited faxes.

\* \* \*

We hold that the FCC's 2006 Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes. The FCC's Order in this case interpreted and

applied that 2006 Rule. We vacate that Order and remand for further proceedings.[2]

*So ordered.*

---

[2] The FCC waived application of the 2006 Solicited Fax Rule to fax advertisements sent before April 30, 2015. A different set of petitioners challenged the FCC's waiver. In light of our decision that the FCC's Solicited Fax Rule is unlawful, we dismiss the waiver petitions as moot.

PILLARD, *Circuit Judge*, dissenting: The court holds that the FCC's requirement of opt-out notices on fax ads contravenes the plain text of the statute. The majority shortchanges the FCC's statutory authority to "implement" Congress's ban on "unsolicited" fax ads—those sent without "prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(b)(2), (b)(1)(C), (a)(5). The FCC reasonably concluded that opt-out notices are needed on all fax ads so that recipients can easily limit or withdraw their "invitation or permission." Regulation of "unsolicited" advertising requires a mechanism for discerning whether someone who okayed fax ads at some point in the past is still willing to receive an advertiser's further faxes. The likely result of the court's decision is to make it harder for recipients to control what comes out of their fax machines (and so perhaps more hesitant to acquiesce to receive fax ads in the first place)—precisely the sort of anti-consumer harm Congress intended to prevent.

I.

The majority fails to see the FCC's rationale for requiring that all fax ads include an informative opt-out notice. *See* Maj. Op. at 10. Anybody who has ever shared contact information and then suffered a fusillade of annoying and unstoppable advertisements—whether by phone, text, email, or fax—recognizes the nature of the problem the FCC was trying to address. Testing the water is no commitment to an endless swim; it is a reasonable protection of the hesitant swimmer to prohibit hiding the life jackets.

The FCC was authorized to give such protection. Congress directed the FCC to "prescribe regulations to implement" the prohibition on the sending of fax ads absent the recipient's "prior express invitation or permission." 47 U.S.C. § 227(b)(2), (a)(5). Beyond clarifying that the permission need not be in writing, Congress said nothing about how "prior express invitation or permission" might be elicited, or when it

might lapse or be withdrawn. Does an advertiser need to secure permission before sending *each* fax ad to a particular recipient? Would permission, once given, last forever? Or must an advertiser provide a spectrum of more nuanced options between those poles? The statute does not say, and the FCC reasonably determined that, in part to guard against error or fraud in identifying who has in fact agreed to accept fax ads, permission would last only "until the consumer revokes such permission by sending an opt-out request to the sender." 21 F.C.C. Rcd. 3787, 3812 (2006).

So far so good; that reasonable statutory interpretation has not been challenged. But this right to opt-out raised a further question: If, for permission to be meaningful, recipients must be able to limit or withdraw it, do advertisers need to make clear how that may be done? The FCC concluded that they do. Requiring all fax ads to include information about opting out would "allow consumers to stop unwanted faxes in the future." 21 F.C.C. Rcd. at 3812. As the FCC further explained in the order under review, the failure to provide opt-out notices could confront fax recipients "with a practical inability to make senders aware that their consent is revoked." 29 F.C.C. Rcd. 13998, 14007 (2014). Indeed, the inclusion of an opt-out notice is part of what makes subsequent faxes "solicited" at all. *See id.* at 14007 n.69. The conspicuous presence of a standardized notice specifying an opt-out mechanism helps to confirm that those recipients who don't opt out actually agree to receive more ads, and are not left fuming and spluttering as they spend "considerable time and effort to determine how to properly opt out." *Id.* at 14007.

Thus, the FCC's regulation must be considered in light of Congress's charge to the FCC to "prescribe regulations to implement" a regime that defines the capacious statutory phrase "prior express invitation or permission." 47 U.S.C. § 227(b)(2), (a)(5). By promulgating this rule, the FCC sought

to "implement"—to make meaningful and effective—its unchallenged view that "prior express invitation or permission" encompasses past permission that has not been delimited despite a reasonable opportunity to do so. *See* 29 F.C.C. Rcd. at 14006-07; 21 F.C.C. Rcd. at 3811-12.

The majority misses this because, in its telling, the Junk Fax Prevention Act's requirement of an opt-out notice on unsolicited faxes sent pursuant to an established business relationship "is central to this case." Maj. Op. at 5. That account makes pivotal what is peripheral. The FCC has authority—pursuant to the general ban on unsolicited faxes and its mandate to implement that ban—to require an opt-out notice on *all* fax ads. The fact that Congress required an opt-out notice as a condition of treating unsolicited ads faxed to an established business partner as if they were solicited does not detract from the FCC's preexisting authority to require opt-out notices on other faxed advertisements.

In my view, a different provision of the Junk Fax Prevention Act is more central to this case: Congress's addition of the qualifier "in writing or otherwise" after "prior express invitation or permission." *See* Pub. L. No. 109-21, § 2(g), 119 Stat. 359 (2005). In rulemaking to implement the Act, the FCC expressed concern that "permission not provided in writing may result in some senders erroneously claiming they had the recipient's permission to send facsimile advertisements." 21 F.C.C. Rcd. at 3812. The opt-out notice was one response to that concern; it would give recipients an easy way to make clear their consent *vel non*. The FCC knew well that without a standardized way to refuse unwanted ads these cases could become, in the words of one district court, a "factual morass" where the line between "solicited" and "unsolicited" is rather hazy. *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 497 (W.D. Mich. 2014). That court held that, where advertisers bought lists of

potential customers' fax numbers from a professional association whose members did not all want their ads, an "unequivocal requirement of a simple opt-out notice on every fax was the only way to give practical effect" to Congress's ban on unsolicited ads. *Id.*

The majority nevertheless maintains that the FCC stepped over the "line" that Congress "drew" separating unsolicited ads (regulable) from solicited ads (non-regulable). Maj. Op. at 9. But Congress drew no such line. Congress expressly delegated authority to the FCC to implement a prohibition on unsolicited ads, and the opt-out notice requirement does exactly that. The majority appears to assume that, by banning unsolicited ads, Congress implicitly forbade regulation of ostensibly solicited ads—even if the very purpose and effect of the regulation is to refine the definition of which ads count as solicited (and so permitted), and which are banned as unsolicited. We have said that the *expressio unius est exclusio alterius* canon is "an especially feeble helper in an administrative setting, where Congress is presumed to have left to reasonable agency discretion questions that it has not directly resolved." *Nat'l Ass'n of Mfrs. v. SEC*, 748 F.3d 359, 367 (D.C. Cir. 2014) (quoting *Cheney R. Co., Inc. v. ICC*, 902 F.2d 66, 69 (D.C. Cir. 1990)), *overruled in part on other grounds by Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014) (en banc). This case reinforces that wisdom: The majority depends entirely on a negative implication from the rule's proscription of "unsolicited" ads, thereby missing the point that the opt-out notice on all fax ads is part of the FCC's simple and effective mechanism for differentiating solicited from unsolicited ads. In short, the opt-out notice requirement represents a means of implementing a given power, not the exercise of an unauthorized power.

The majority laments that petitioner Anda was "potentially on the hook" for $150 million in damages for failing to include

an opt-out notice on "solicited" ads. Maj. Op. at 7. But any such award would simply reflect Congress's decision that, to prompt compliance, the requirement needed bite in the form of at least $500 in statutory damages for each violation. Congress wanted to put an end to unsolicited fax advertising. What is truly striking is how simply fax advertisers like Anda could have avoided such exposure by following the letter of the regulation and adding a few words to their standard faxes. *See* J.A. 986-89 (examples of compliant ads). While emphasizing the litigation risk faced by the fax-ad industry, the majority ignores Congress's actual policy choice: to protect recipients from unwanted ads that waste their supplies, clutter their fax intake, and delay receipt of desired faxes. *See* H.R. REP. NO. 102-317, at 25 (1991); S. REP. NO. 102-178, at 2 (1991). Congress decided that its policy could best be enforced through a private right of action, and that statutory damages were necessary to encourage plaintiffs' counsel to invest in private enforcement actions—an approach it apparently preferred over either non-enforcement or enlarged federal administrative capacity. If that policy is to be reversed, Congress—not this Court—must make that decision.

## II.

Because its statutory ruling moots the issue, the majority does not reach the FCC's decision to waive the opt-out notice requirement for all faxes sent before April 30, 2015. Maj. Op. at 11 n.2. I would hold that the FCC failed to establish good cause for that sweeping, retroactive waiver.

"The FCC has authority to waive its rules if there is 'good cause' to do so." *Ne. Cellular Tel. Co., L.P. v. FCC*, 897 F.2d 1164, 1166 (D.C. Cir. 1990) (quoting 47 C.F.R. § 1.3). A waiver is appropriate "only if [1] special circumstances warrant a deviation from the general rule and [2] such deviation will serve the public interest." *Id.* "The reason for this two-part test flows from the principle that an agency must adhere to its own

rules and regulations, and *ad hoc* departures from those rules, even to achieve laudable aims, cannot be sanctioned." *NetworkIP, LLC v. FCC*, 548 F.3d 116, 127 (D.C. Cir. 2008) (internal quotation marks and alterations omitted). Thus, an agency may grant waivers "only pursuant to a relevant standard" and "may not act out of unbridled discretion or whim in granting waivers any more than in any other aspect of its regulatory function." *WAIT Radio v. FCC*, 418 F.2d 1153, 1159 (D.C. Cir. 1969). A waiver applicant "faces a high hurdle even at the starting gate" and must "plead with particularity the facts and circumstances which warrant" a waiver. *Id.* at 1157.

Here, the FCC did not establish that special circumstances and the public interest favor a broad retroactive waiver.

First, the FCC overstated the confusion that regulated parties reasonably could have experienced on reviewing the FCC's handiwork—the sole "special circumstance" it identified. As the Eighth Circuit has noted, the "plain language" of the FCC regulation, as published in the Code of Federal Regulations, unambiguously required "solicited" faxes to include the opt-out notice. *Nack v. Walburg*, 715 F.3d 680, 683 (8th Cir. 2013). In light of the plain regulatory language, an errant footnote in the FCC's explanatory order could not have caused significant reasonable confusion. As the FCC has conceded, "where a conflict exists between the text and a footnote in the same agency Order, established precedent provides that 'the text of the [agency's] decision controls.'" 29 F.C.C. Rcd. at 14010 n.97 (quoting *United Steelworkers of Am., AFL-CIO v. NLRB*, 389 F.2d 295, 297 (D.C. Cir. 1967)). Here, where the conflict was between *the text of a published regulation* and a mere footnote in the agency's explanatory order, surely a prudent regulated party would undertake to follow the regulation. Nevertheless, the FCC did not require waiver-seekers to demonstrate that they were actually confused, or even that there was general confusion in the

industry. Instead, the FCC accepted a waiver-seeker's mere "reference to the confusing footnote language" as sufficient to establish "reasonable confusion" and, thus, special circumstances. *Id.* at 14009-10. The FCC thereby threw open the door to opportunistic waiver-seekers whose unsubstantiated claims could be surmounted only by (impossible-to-obtain) evidence that they were not actually confused.

Second, the FCC failed to explain how its broad waiver serves the public interest. The FCC barely even discussed the public interests served by its opt-out notice requirement, much less did it explain how granting a windfall to waiver-seekers with records of wholesale, prolonged violations of that requirement is consistent with those interests. The FCC asserted that the waiver would rescue confused businesses from the possibility of "significant damage awards." 29 F.C.C. Rcd. at 14011. But the interest of regulated parties in avoiding congressionally authorized damages is not a "public" interest of the sort contemplated by our precedents. We have explained that public-interest waivers are for applicants whose conduct "will not undermine the policy, served by the rule, that has been adjudged in the public interest." *WAIT Radio*, 418 F.2d at 1157. In other words, waivers are justified by reference to the same public interest that supports the general requirement—not by reference to regulated parties' interest in avoiding costs the statute imposes as part of its enforcement mechanism. For instance, the FCC perhaps could have justified a targeted waiver for advertisers who violated some specifics of the requirement despite providing a reasonably clear but technically noncompliant means for recipients to opt out. *See, e.g.*, J.A. 991-93. In any event, assuming a private interest might be one factor for the agency's consideration, the FCC itself acknowledged it was not "an inherently adequate ground for waiver"—even as it failed to offer any adequate ground. 29 F.C.C. Rcd. at 14011.

In my view, the FCC thus "eviscerat[ed]" its own rule via waiver, rather than employing the "limited safety valve" authorized by this Court's precedents. *WAIT Radio*, 418 F.2d at 1159.

### III.

Because the FCC validly implemented the congressional ban on "unsolicited" fax ads by requiring an opt-out notice on all fax ads, and failed to justify retroactively and indiscriminately waiving that requirement, I respectfully dissent.